## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**DARREN STERLING**                                    **CIVIL ACTION**

**VERSUS**                                             **NO.  17-2857**

**TIMOTHY HOOPER, WARDEN**                             **SECTION "H"(2)**


## <u>REPORT AND RECOMMENDATION</u>

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  <u>See</u> 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

## I.    <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

The petitioner, Darren Sterling, is incarcerated in the Elayn Hunt Correctional Center in St. Gabriel, Louisiana.[2]  On January 24, 2011, Sterling was charged in St. John

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

[2]Rec. Doc. No. 1.

the Baptist Parish by separate bills of information for two counts of attempted first degree

murder and one count of simple criminal damage to property under $500.[3]  An amended

bill of information was filed on June 2, 2011, charging Sterling with four counts of

attempted first degree murder and one count of possession of a weapon by a convicted

felon.[4]  The Louisiana Fifth Circuit Court of Appeal summarized the facts determined at

trial in relevant part as follows:

> On December 31, 2010, Andrea Franklin was locking the door of her hair
> salon while talking to Tranda Crier, a customer, when defendant, Ms. Franklin's
> long-time live-in boyfriend, pulled up in a car and approached her.  Defendant
> made a comment to Ms. Franklin about her throwing his personal belongings out
> of the house and then he hit her in the head, causing her sunglasses and one of her
> earrings to fall off.  Defendant then stepped back, pulled a gun from his pants, and
> shot Ms. Franklin twice in the abdomen.  Afterward, Ms. Franklin ran to Ms.
> Crier's car, and defendant ran behind her.  Ms. Franklin jumped into the front
> passenger seat of the car, sat on one of Ms. Crier's daughters, and closed the door.
> Defendant shot into the car, and the bullet shattered the glass and grazed Ms.
> Franklin's arm and breast.

State v. Sterling, 131 So.3d 295, 298 (La. App. 5th Cir. 2013); State Record Volume 10

of 16, Louisiana Fifth Circuit Opinion, 13-KA-287, pages 2-3, December 12, 2013.

The state trial court severed the felon in possession count on May 14, 2012.[5]

Sterling was tried before a jury on May 15-17, 2012, and found guilty of the lesser

---

[3]St. Rec. Vol. 1 of 16, Bill of Information, 124686650, 1/24/11; Bill of Information, 124686668, 1/24/11; Bill of Information, 124686676, 1/24/11.

[4]St. Rec. Vol. 2 of 16, Amended Bill of Information, 6/2/11; Motion to Amend Information, 6/2/11; Trial Court Order, 6/2/11.

[5]St. Rec. Vol. 8 of 16, Hearing Transcript, p. 1771, 5/14/12; St. Rec. Vol. 3 of 16, Motion for Reconsideration, 5/10/12; Motion for Severance of Offenses, 4/4/12.

offense of aggravated battery as to count one and not guilty on the remaining three counts of attempted first degree murder.[6]  At a hearing on August 20, 2012, the state trial court denied Sterling's motion for judgment of acquittal and for a new trial.[7]  That same day, the state trial court adjudicated Sterling to be a fifth felony offender.[8]  The court sentenced Sterling on September 17, 2012, a fifth felony offender to serve fifty (50) years in prison without benefit of parole, probation or suspension of sentence.[9]  The court later denied Sterling's motion to reconsider the sentence.[10]

On direct appeal to the Louisiana Fifth Circuit, Sterling's appointed counsel asserted four errors:[11] (1) The state trial court erred by denying the defense's motion for

---

[6]St. Rec. Vol. 1 of 16, Trial Minutes, 5/15/12; Trial Minutes, 5/16/12; Trial Minutes, 5/17/12; St. Rec. Vol. 3 of 16, Jury Verdict, 5/17/12; St. Rec. Vol. 8 of 16, Trial Transcript, 5/15/12; St. Rec. Vol. 9 of 16, Trial Transcript (continued), 5/15/12; Trial Transcript, 5/16/12; St. Rec. Vol. 10 of 16, Trial Transcript (continued), 5/16/12; Trial Transcript, 5/17/12.

[7]St. Rec. Vol. 1 of 16, Multiple Bill Hearing Minutes, 8/20/12; St. Rec. Vol. 3 of 16, Multiple Bill, 5/23/12; St. Rec. Vol. 14 of 16, Multiple Bill Hearing Transcript, p. 4, 8/20/12; Motion for Judgment of Acquittal, 7/27/12; St. Rec. Vol. 4 of 16, Motion for New Trial, 6/2/11.

[8]St. Rec. Vol. 1 of 16, Multiple Bill Hearing Minutes, 8/20/12; St. Rec. Vol. 14 of 16, Multiple Bill Hearing Transcript, p. 21, 8/20/12.

[9]St. Rec. Vol. 1 of 16, Sentencing Minutes, 9/17/12; St. Rec. Vol. 10 of 16, Sentencing Transcript, p. 2488, 9/17/12.  The court also considered and apparently adhered to Sterling's motion to deviate from the mandatory minimum sentence of life in prison.  St. Rec. Vol. 10 of 16, Sentencing Transcript, p. 2486, 9/17/12; St. Rec. Vol. 4 of 16, Motion to Deviate, 8/15/12.

[10]St. Rec. Vol. 1 of 16, Minute Entry, 10/4/12; St. Rec. Vol. 14 of 16, Hearing Transcript, 10/4/12.

[11]St. Rec. Vol. 9 of 12, Appeal Brief, 2011-KA-0253, 4/20/11.  Sterling was granted leave to file a pro se supplemental brief.  St. Rec. Vol. 10 of 16, Motion for Leave, 7/22/13; 5th Cir. Order, 2013-KA-0287, 7/22/13.  No such pleading appears in the appellate record.  A copy of an unfiled pro se brief was attached to Sterling's subsequent Louisiana Supreme Court writ application.  St. Rec. Vol. 11 of 16, Copy of Unfiled Pro Se Brief, 2013-KA-0287, not dated or signed.  In that brief, Sterling asserted that

new trial because the evidence was insufficient to support the jury's verdict. (2) The state trial court erred in failing to grand a mistrial. (3) The state trial court imposed an excessive sentence. (4) The state trial court erred in failing to replace a sleeping juror with an alternate before deliberations at the request of defense counsel.  The Louisiana Fifth Circuit affirmed the conviction and sentence on December 12, 2013, finding all claims meritless.[12]

The Louisiana Supreme Court denied Sterling's related writ application on August 25, 2014, without stated reasons.[13]  His conviction became final ninety (90) days later on Monday,[14] November 24, 2014, when he did not file a writ application with the United States Supreme Court.  Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filling for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

On March 31, 2015, Sterling signed and submitted to the state trial court an application for post-conviction relief and accompanying memorandum in which he

_____

the district attorney falsely stated that he repeatedly shot his gun in an effort to confuse the jury.  This claim, even if properly asserted, is not relevant to the resolution of this federal habeas petition.

[12]Sterling, 131 So.3d at 295; St. Rec. Vol. 10 of 16, 5th Cir. Opinion, 13-KA-287, 12/12/13.

[13]State v. Sterling, 147 So.3d 698 (La. 2014); St. Rec. Vol. 11 of 16, La. S. Ct. Order, 2014-KO-0065, 8/25/14; La. S. Ct. Writ Application, 14-KO-65, 1/10/14 (dated 1/6/14).

[14]The final day was Sunday, November 23, 2014, which extended the last day of the period to Monday, November 24, 2014.  Fed. R. Civ. P. 6(a)(1)(C).

asserted seven grounds of ineffective assistance of counsel:[15] (1) Counsel failed to keep the agreement of privilege and confidentiality. (2) Counsel failed to present a defense by not investigating a witness and not having a private investigator record statements made by the doctors. (3) Counsel failed to contact an alibi witness, Johnell Butler, who was in the car with petitioner. (4) Counsel failed to obtain an expert witness regarding the bullets and bullet wounds. (5) Counsel failed to file a motion for change of venue. (6) Counsel failed to object to the sleeping juror. (7) Counsel failed to cross-examine the victim about her text messages. After receiving additional briefing, the trial court denied relief on June 11, 2015, under Strickland v. Washington, 466 U.S. 688 (1984).[16]

On September 16, 2015, the Louisiana Fifth Circuit denied Sterling's related writ application, citing the state trial court's reasons.[17] The Louisiana Supreme Court denied Sterling's related writ application as meritless under Strickland, 466 U.S. at 668, with incorporated reference to the state trial court's reasons.[18]

---

[15]St. Rec. Vol. 13 of 16, Application for Post-Conviction Relief, 4/8/15 (dated 3/31/15); Memorandum, undated.

[16]St. Rec. Vol. 12 of 16, Trial Court Judgment, 6/11/15.

[17]St. Rec. Vol. 13 of 16, 5th Cir. Order, 15-KH-519, 9/16/15; 5th Cir. Writ Application, 15-KH-519, dated 8/19/15.

[18]State ex rel. Sterling v. State, 207 So.3d 1048 (La. 2016); St. Rec. Vol. 12 of 16, La. S. Ct. Order, 2015-KH-1895, 12/16/16; La. S. Ct. Writ Application, 15-KH-1895, 10/16/15 (dated 10/13/15).

II.    FEDERAL HABEAS PETITION

On April 3, 2017, the clerk of this court filed Sterling's petition for federal habeas corpus relief in which he asserted that he was denied effective assistance of counsel on seven grounds:[19] (1) Counsel failed to keep the agreement of privilege and confidentiality. (2) Counsel failed to present a defense by not investigating a witness who changed testimony at trial and failed to have a private investigator record statements made by the doctors. (3) Counsel failed to contact an alibi witness, Johnell Butler, who was in the car with petitioner. (4) Counsel failed to obtain an expert witness regarding the bullets and bullet wounds. (5) Counsel failed to file a motion for change of venue to avoid judicial bias. (6) Counsel failed to object to the sleeping juror. (7) Counsel failed to cross-examine the victim about certain text messages.

The State filed an answer and memorandum opposing Sterling's petition and asserting that he has failed to establish entitlement to relief.[20]  Sterling filed a reply to the State's opposition response, seeking relief based on the cumulative effect of his trial counsel's errors.[21]

---

[19]Rec. Doc. No. 1, pp. 5, 24-26.

[20]Rec. Doc. Nos. 12, 12-1.

[21]Rec. Doc. No. 13.

III.    GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[22] and applies to habeas petitions filed after that date. Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)). The AEDPA therefore applies to Sterling's petition, which, for reasons discussed below, is deemed filed in a federal court on March 29, 2017.[23] The threshold questions in habeas review under the amended statute are whether the petition is timely and whether petitioner's claims were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

---

[22]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[23]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). The clerk filed Sterling's petition on April 3, 2017, when it was received. Sterling dated his signature on the petition on March 29, 2017. This is the earliest date appearing in the record on which he could have handed his pleadings to prison officials for mailing to a federal court.

The State concedes that Sterling's federal petition was timely filed and that he exhausted state court review of his claims. None of his claims are in procedural default.

## IV.    STANDARDS OF A MERITS REVIEW

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings. Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'" (brackets in original) Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)), aff'd in part, rev'd in part on other grounds,

532 U.S. 782 (2001); Hill, 210 F.3d at 485.  The United States Supreme Court has

clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ
> if the state court arrives at a conclusion opposite to that reached by this
> Court on a question of law or if the state court decides a case differently
> than this Court has on a set of materially indistinguishable facts.  Under the
> "unreasonable application" clause, a federal habeas court may grant the
> writ if the state court identifies the correct governing legal principle from
> this Court's decisions but unreasonably applies that principle to the facts
> of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2000); Penry, 532 U.S. 782, 792-93 (2001)

(citing Williams, 529 U.S. at 405-06, 407-08); Hill, 210 F.3d at 485.  The "critical point"

in determining the Supreme Court rule to be applied "is that relief is available under §

2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly

established rule applies to a given set of facts that there could be no 'fairminded

disagreement' on the question." (citation omitted)  White v. Woodall, 134 S. Ct. 1697,

1706-07 (2014) (citing Harrington v. Richter, 562 U.S. 86, 103 (2011) and Knowles v.

Mirzayance, 556 U.S. 111, 122 (2009)).  "Thus, 'if a habeas court must extend a rationale

before it can apply to the facts at hand,' then by definition the rationale was not 'clearly

established at the time of the state-court decision.'"  White, 134 S. Ct. at 1706 (quoting

Yarborough v. Alvarado, 541 U.S. 652, 666 (2004)).

    "'[A] federal habeas court may not issue the writ simply because that court

concludes in its independent judgment that the state-court decision applied [a Supreme

Court case] incorrectly.'" (citation omitted, brackets in original) Price v. Vincent, 538

U.S. 634, 641 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002) and Bell

v. Cone, 535 U.S. 685, 699 (2002)).   Rather, under the "unreasonable application"

standard, "the only question for a federal habeas court is whether the state court's

determination is objectively unreasonable."  Neal v. Puckett, 286 F.3d 230, 246 (5th Cir.

2002), cert. denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003).  The burden is on the

petitioner to show that the state court applied the precedent to the facts of his case in an

objectively unreasonable manner.  Price, 538 U.S. at 641 (quoting Woodford, 537 U.S.

at 24-25); Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

VI.    EFFECTIVE ASSISTANCE OF COUNSEL

Sterling asserts seven grounds on which he claims his trial counsel provided

ineffective assistance.  He asserted these claims on post-conviction review in the state

courts.  The Louisiana Supreme Court provided the last reasoned opinion finding that

Sterling failed to establish a basis for relief under Strickland and adopted the state trial

court's written reasons.

The standard for judging performance of counsel, relied on by the state courts, was

established by the United States Supreme Court in Strickland, in which the Supreme

Court established a two-part test for evaluating claims of ineffective assistance of

counsel, requiring petitioner to prove both deficient performance and resulting prejudice.

Strickland, 466 U.S. at 687.  The Supreme Court first held that "the defendant must show

10

that counsel's representation fell below an objective standard of reasonableness." Id. at 688. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. Kimler, 167 F.3d at 892-93. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' But it is not enough, under Strickland, 'that the errors had some conceivable effect on the outcome of the proceeding.'" (citation omitted) Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting Strickland, 466 U.S. at 693); Harrington, 562 U.S. at 112 (Strickland requires a "substantial" likelihood of a different result, not just "conceivable" one.)

On habeas review, the United States Supreme Court has clarified that, under Strickland, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." Harrington, 562 U.S. at 105 (quoting Strickland, 466 U.S. at 690). The Harrington Court went on to recognize the high level of deference owed to a state court's findings under Strickland in light of the AEDPA:

> The standards created by <u>Strickland</u> and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.

(citations omitted) <u>Harrington</u>, 562 U.S. at 105.

Thus, scrutiny of counsel's performance under § 2254(d) is "doubly deferential." <u>Cullen v. Pinholster</u>, 563 U.S. 170, 190 (2011) (quoting <u>Knowles</u>, 556 U.S. at 123). This court must therefore apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." <u>Strickland</u>, 466 U.S. at 689.

Federal habeas courts presume that litigation strategy is objectively reasonable unless clearly proven otherwise by the petitioner. <u>Id.</u>, 466 U.S. at 689; <u>Geiger v. Cain</u>, 540 F.3d 303, 309 (5th Cir. 2008); <u>Moore v. Johnson</u>, 194 F.3d 586, 591 (5th Cir. 1999). In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. <u>Strickland</u>, 466 U.S. at 689; <u>Neal</u>, 286 F.3d at 236-37; <u>Clark v. Johnson</u>, 227 F.3d 273, 282-83 (5th Cir. 2000), <u>cert. denied</u>, 531 U.S. 1167 (2001). Tactical decisions when supported by the circumstances are objectively reasonable and do not amount to

unconstitutionally deficient performance.  Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)).

The issue of ineffective assistance of counsel is a mixed question of law and fact. Clark v. Thaler, 673 F.3d 410, 416 (5th Cir. 2012); Woodfox v. Cain, 609 F.3d 774, 789 (5th Cir. 2010).  Thus, under the AEDPA, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

A.    MAINTAIN PRIVILEGE AND CONFIDENTIALITY

Broadly construing Sterling's arguments, he claims that his trial counsel breached his duty of client confidentiality when he discussed defense strategy with the State. Sterling claims that his counsel spoke to the victim, who conceded that the incident involved a struggle during which the gun discharged.  He further claims that, when this was revealed by his counsel to the prosecutor, the victim was coached by the State to change her story.

Sterling discussed his concerns with the state trial court during a status conference on August 3, 2011.[24]  He advised the court that he wanted new counsel, because his appointed counsel was not looking out for his best interest, declared him to be guilty and

---

[24]St. Rec. Vol. 14 of 16, Hearing Transcript, 8/3/11.

13

disclosed privileged information in written documents.[25]  His attorney responded that the privilege was destroyed when Sterling filed a bar complaint against him, and counsel was compelled to respond to it.  The court discussed Sterling's ability to retain other counsel and the ramifications of his choice to represent himself.[26]  Sterling was given additional time to hire private counsel, although no other counsel ever enrolled.

Sterling asserted this claim in his application for post-conviction relief.  The issue was generally denied at each level of the state courts for lack of a showing under Strickland.  Sterling has not established that this ruling was contrary to or an unreasonable application of the law.

Sterling has not established an unreasonable action by his counsel that altered the outcome of his trial.  Although his complaint is one of breach of the attorney-client privilege, he actually alleges that his counsel told the prosecution before trial that the victim wanted the charges dropped because the gun discharged during a struggle. Sterling contends that the State used this information to coach the victim for her trial testimony.  Sterling recognizes that his counsel was at least attempting to challenge the need for any prosecution based on the victim's alleged statements.  The fact that the State did not drop the charges or that this strategic attempt by defense counsel was

---

[25]Id. at pp. 5-6.

[26]Id. at pp. 6-12, 17-23.

unsuccessful does not necessarily equate to unreasonable or deficient performance.[27]
Martinez v. Dretke, 99 F. App'x 538, 543 (5th Cir. 2004).  In addition, as specifically
acknowledged by Sterling in the counsel-filed motion for new trial and on direct appeal,
the jury received ample evidence at trial to suggest the possibility that the gun discharged
during a struggle between Sterling and the victim.  Apparently, the jury chose to discount
the credibility of that evidence.

Sterling has failed to establish that the denial of relief by the state courts on this
ground was contrary to or an unreasonable application of Strickland.  He is not entitled
to relief on this claim.

B.    PREPARE AND PRESENT A DEFENSE

Broadly construing Sterling's arguments, he asserts that his counsel failed
adequately to prepare and investigate the testimony of the victim, the doctors and the
State's ballistics expert.  In his more detailed briefing in the state courts, Sterling
explained that his counsel failed to use his pretrial conversations with the victim during
cross-examination to expose how the victim told counsel that the gun discharged during
a struggle.  He also asserts that counsel was negligent when he did not hire a private
investigator to interview and record pretrial statements from the doctors and the State's

---

[27]To whatever extent, if any, that Sterling claims the State may have misused the information
received from his counsel or unduly influenced the victim's testimony, he has neither asserted nor
presented a claim of prosecutorial misconduct.

ballistics expert to use to prove perjury at trial.  Sterling presented these arguments to the state courts and relief was denied for his general failure to meet the Strickland standards.

"A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." (quotation omitted, emphasis added)  Druery v. Thaler, 647 F.3d 535, 541 (5th Cir. 2011) ; accord Moawad v. Anderson, 143 F.3d 942, 948 (5th Cir. 1998).  A petitioner cannot show prejudice as to a claim that his counsel failed to investigate without adducing what the investigation would have shown.  Diaz v. Quarterman, 239 F. App'x 886, 890 (5th Cir. 2007) (some evidence is required to show that "the decision reached would reasonably likely have been different.") (quoting Strickland, 466 U.S. at 696) .  To prevail on such a claim, petitioner must provide factual support showing what exculpatory evidence further investigation would have revealed.  See Brown v. Dretke, 419 F.3d 365, 375 (5th Cir. 2005); Moawad, 143 F.3d at 948; Davis v. Cain, No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008).  Anderson merely speculates that his counsel could have done more to investigate the case and prepare for trial.  He is required to present more than conclusory assertions to establish ineffective assistance of counsel.  Green v. Johnson, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue.").

Sterling's counsel presented ample testimony and evidence that convinced the jury that he was not guilty of three of the charged attempted first degree murder counts and guilty only of the lesser offense of aggravated battery. Nevertheless, Sterling now suggests that his counsel was ineffective because he did not prevent the State's witnesses, specifically the victim, doctors and ballistics expert, from testifying contrary to the defense's theory of the case. Sterling blames his counsel for the fact that the victim testified that she was attacked by him, rather than that she was a participant in a struggle that resulted in multiple accidental shootings. In addition, he claims his counsel should have been better prepared to cross-examine the treating physicians and ballistics expert whose testimony he alleges was inconsistent with their respective reports. As Sterling recognizes in his post-trial pleadings, however, his counsel went to great efforts to cross-examine these and other witnesses to challenge the forensic findings and establish his self-defense and/or accidental shooting theories.

Sterling also claims that counsel told him post-trial that he should have hired an investigator to interview the doctors to better prepare for any inconsistencies that might arise in their trial testimony. Even assuming without evidence, the truth of this assertion, counsel did no more than second-guess his strategic decisions and consider in hindsight what might have been done differently. This not proof of deficient performance. Counsel's decisions on how to proceed with trial and the evidence to be presented are given great deference under Strickland and its progeny. Thus, even if counsel

acknowledged that he could have pursued a different theory or tack, the reviewing court must weigh the reasonableness of the decisions against the substantial evidence of Sterling's guilt and without the clarifying goggles of hindsight.  See Martinez, 99 F. App'x at 543 (in light of the evidence, counsel was not ineffective even though she wished she had presented other trial testimony).  In light of the verdict of not guilty as to the serious attempted murder charges, it is certain that counsel's evidentiary choices had an impressive and favorable impact on the jury.

Sterling has not established that his counsel's actions were deficient or prejudicial as defined by Strickland.  The state court's denial of relief was not contrary to or an unreasonable application of Strickland.  Sterling is not entitled to relief on this issue.

## C.   CONTACT AN ALIBI WITNESS

Sterling asserts that his counsel was ineffective when he failed to contact Johnell Butler, who was in the car with petitioner and could have testified as an alibi witness. Relief on this issue was generally denied by the state courts under Strickland.

It is well settled that "'[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.'"  Graves v. Cockrell, 351 F.3d 143, 156 (5th Cir. 2003) (quoting Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978)); accord Bray v. Quarterman, 265 F. App'x 296, 298 (5th Cir. 2008).  To prevail on such a claim, petitioner must name the witness, demonstrate that the witness was

18

available to testify and would have done so, set out the content of the witness's proposed testimony and show that the testimony would have been favorable to a particular defense. Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009) (citing Bray, 265 F. App'x at 298). The Fifth Circuit has "clarified that the seemingly technical requirements of affirmatively showing availability and willingness to testify '[are] not a matter of formalism.'" Hooks v. Thaler, 394 F. App'x 79, 83 (5th Cir. 2010) (quoting Woodfox, 609 F.3d at 808).

The only potential witness Sterling identified by name was Johnell Butler, who was one of the passengers in the car in which Sterling arrived and left the shooting. Sterling claims that Butler would have been an alibi witness. He does not, however, indicate to what Butler would have testified or whether Butler was amendable or available to testify at his trial. Sterling therefore has not met the minimum requirements necessary adequately to assert a claim of ineffective assistance based on the failure to call Butler. He presented no evidence or affidavit to either the state courts or this court to demonstrate that Butler was available to testify in a manner beneficial to the defense. Sterling's claim is purely speculative and conclusory. Therefore, he has failed to meet his burden of proof with respect to this claim. See, e.g., United States v. Cockrell, 720 F.2d 1423, 1427 (5th Cir. 1983) (courts view "with great caution claims of ineffective assistance of counsel when the only evidence of a missing witness's testimony is from the defendant"); Buniff v. Cain, No. 07-1779, 2011 WL 2669277, at *3 (E.D. La. July 7, 2011) (Petitioner's "speculations" about what uncalled witnesses would have testified about "are unsupported by anything

other than petitioner's self-serving testimony at trial.  The only evidence of a missing witness's testimony is from petitioner."); <u>Anthony v. Cain</u>, No. 07-3223, 2009 WL 3564827, at *8 (E.D. La. Oct. 29, 2009) ("This Court may not speculate as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from the uncalled witnesses, on that issue."); <u>Combs v. United States</u>, Nos. 08-CV-0032 and 03-CR-0188, 2009 WL 2151844, at *10 (N.D. Tex. July 10, 2009) ("Unless the movant provides the court with affidavits, or similar matter, from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice."); <u>Harris v. Director, TDCJ-CID</u>, No. 06cv490, 2009 WL 1421171, at *7 (E.D. Tex. May 20, 2009) ("Failure to produce an affidavit (or similar evidentiary support) from the uncalled witness is fatal to the claim of ineffective assistance.").

As determined by the state courts, Sterling has failed to establish any deficiency or prejudice arising from his counsel's failure to call Butler.  The denial of relief on this issue was not contrary to or an unreasonable application of <u>Strickland</u>.

D.    <u>HIRE AN EXPERT WITNESS</u>

Sterling asserts that his counsel was ineffective when he failed to obtain an expert witness to counter the State's expert testimony concerning identification of the bullet fragment types and causation of the bullet wounds themselves.  Relief on this claim was denied by the state courts under <u>Strickland</u>.

A petitioner's claim regarding the failure of his attorney to retain and call an expert as a witness at trial is addressed in the same manner as a claim regarding any uncalled lay witness. Woodfox, 609 F.3d at 808; Day, 566 F.3d at 538 (citing Evans v. Cockrell, 285 F.3d 370, 377-78 (5th Cir. 2002)). Under this standard, the federal courts recognize that such claims are largely speculative and not favored on habeas review. Graves, 351 F.3d at 156. In the case of an expert, petitioner must identify a particular expert who was available to testify in a manner favorable to a particular defense. Id. The Fifth Circuit requires this showing "as part of the burden of proving that trial counsel could have found and presented a favorable expert." (citation omitted) Hooks, 394 F. App'x at 83.

Sterling has not identified any particular expert or any proposed expert testimony to support this claim. He merely speculates that an expert would have reached the opinions he proposes. Sterling has presented no proof that such an opinion was possible or that a specific expert was available and willing to testify in accordance with his suppositions. Earhart v. Johnson, 132 F.3d 1062, 1067-68 (5th Cir. 1998) ("the district court properly concluded that [the petitioner] was not entitled to relief ... because ... he still had failed to show or even allege that an expert could be found whose testimony would have altered the outcome of the state court trial."). Without more than mere speculation, conjecture and second-guessing of trial strategy, Sterling has failed to establish that his trial counsel was ineffective for failing to hire or call defense experts.

21

Even "assuming defense counsel was deficient in failing to request an expert, [the petitioner] has not established that this failure prejudiced his defense or otherwise rendered the outcome of his trial unreliable." Earhart, 132 F.3d at 1068.  In light of the substantial evidence that Sterling shot the victim, even if counsel had located an expert to opine about the bullet fragments and the victim's wounds, Sterling has not shown that such opinion testimony would have created doubt about his guilt or given credence to his self-defense/accidental shooting theories sufficient to alter the verdict.

Sterling has failed to establish any deficient or prejudicial action by his trial counsel in this regard.  In light of his failure and the doubly deferential standard applicable here, he has not shown that the state courts' denial of relief was contrary to or an unreasonable application of Strickland.  He is not entitled to relief on this claim.

E.    FILE A MOTION FOR CHANGE OF VENUE

Sterling alleges that his counsel was ineffective for failing to request a change of venue after counsel was told that one of the victims was the Godchild of a person who did fund-raising for the state trial judge.  Relief on this claim was generally denied by the state courts under the Strickland standards.

To establish prejudice under Strickland, Sterling must "bring forth evidence demonstrating that there is a reasonable probability that the trial court would have, or at least should have, granted a motion for change of venue if [defense] counsel had presented such a motion to the court." Meeks v. Moore, 216 F.3d 951, 961 (11th Cir.

22

2000).   Under either federal or state law, Sterling has not established a basis for his counsel to have moved for a change of venue.  The Fourteenth Amendment protects a defendant's Sixth Amendment right to have his case decided by an impartial jury, <u>Irvin v. Dowd</u>, 366 U.S. 717, 722 (1961), and a defendant may request a "transfer of the proceeding to a different district . . . if extraordinary local prejudice will prevent a fair trial - 'a basic requirement of due process.'"  <u>Skilling v. United States</u>, 561 U.S. 358, 378 (2010) (quoting <u>In re Murchison</u>, 349 U.S. 133, 136 (1955)).  Similarly, under Louisiana law, a trial court must change the venue of a prosecution "when the applicant proves that by reason of prejudice existing in the public mind or because of undue influence, or that for any other reason, a fair and impartial trial cannot be obtained in the parish where the prosecution is pending."  La. Code Crim. P. art. 622; <u>State v. Bordelon</u>, 33 So.3d 842, 866 (La. 2009).  The state trial court must consider whether "the prejudice, the influence, or the other reasons are such that they will affect the answers of jurors on the voir dire examination or the testimony of witnesses at the trial."  <u>Id.</u>  However, "the defendant must prove more than mere public knowledge or familiarity with the facts of the case to be entitled to have his trial moved to another parish; rather, the defendant must show the extent of prejudice in the minds of the community as a result of such knowledge or exposure to the case before trial."  <u>Bordelon</u>, 33 So.3d at 866; <u>State v. Frank</u>, 803 So.2d 1, 14-15 (La. 2001).

Sterling has offered no grounds on which a change of venue may have been prompted based on potential public bias or prejudice.  He has not offered any suggestion of undue exposure of potential jurors to the facts of his case or prejudice in the minds of the community in which he was tried.  He instead urges that counsel should have moved for a change of venue based on an alleged connection between of the victims and the state trial judge.  Without the basic required showing, there is no likelihood apparent from the record that state trial court would have granted a motion for change of venue under federal or state law standards.  Thus, his counsel did not cause prejudice to the defense when he failed to move for a change of venue where there was no legal basis to do so.  Defense counsel is not deficient for failing to file a baseless and unnecessary motion.  Johnson v. Cockrell, 306 F.3d 249, 255 (5th Cir. 2002); Smith v. Puckett, 907 F.2d 581, 585 n.6 (5th Cir. 1990); Koch v. Puckett, 907 F.2d 524, 527 (5th Cir. 1990).

To whatever extent, if any, Sterling intended to argue that his counsel should have filed a motion to recuse the state trial judge, he also has failed to establish a either prong of the Strickland analysis.  He has presented no reasons for, and neither federal nor Louisiana law required his counsel to move to recuse the state trial judge.

"[T]he floor established by the Due Process Clause clearly requires 'a fair trial in a fair tribunal,' before a judge with no actual bias against the defendant or interest in the outcome of his particular case." (citations omitted) Bracy v. Gramley, 520 U.S. 899, 904-05 (1997); Buntion v. Quarterman, 524 F.3d 664, 672 (5th Cir. 2008); Samuel v.

24

Warden, Avoyelles Correctional Center, 51 F. App'x 483, 2002 WL 31319336, at *1 (5th Cir. Sept. 30, 2002).  Both federal and Louisiana law presume that trial judges act fairly and  impartially, and the burden is on the defendant to prove otherwise.  See Bigby v. Dretke, 402 F.3d 551, 558 (5th Cir. 2005) (citing Bracy, 520 U.S. at 909); State v. White, 968 So.2d 901 (La. App. 2d Cir. 2007); State v. Dooley, 882 So.2d 731 (La. App. 2d Cir. 2004), writ denied, 896 So.2d 30 (La. 2005).  When recusal is requested, Louisiana law places the burden on the movant to make affirmative allegations of fact to support recusal.  State v. Williams, 601 So.2d 1374, 1375 (La. 1992).  La. Code Crim. P. art 671 provides the following pertinent grounds on which a trial judge shall be recused:

> A.    In a criminal case a judge of any court, trial or appellate, shall be recused when he:
> (1)    Is biased, prejudiced, or personally interested in the cause to such an extent that he would be unable to conduct a fair and impartial trial;
> [. . .]
> (6)    Would be unable, for any other reason, to conduct a fair and impartial trial.

Sterling has identified no particular instances in his trial record that would indicate bias, prejudice or partiality on the part of the state trial judge.  The transcripts and orders in Sterling's case disclose no comment or remark that would lead reasonable counsel to believe that the state trial judge was biased, prejudiced or partial against Sterling or that the judge had any relationship with the victims or witnesses before her.  Mere conclusory allegations of bias and prejudice do not provide a basis for recusal under Louisiana law. See State in the Interest of M.J., 160 So.3d 1040, 1055-56 (La. App. 4th Cir. 2015)

(finding allegation of bias and prejudice to be "subjective and conclusory" where the trial judge provided objective reasons for his rulings and made no statements to support a finding of actual bias or prejudice). Sterling's conclusory and subjective beliefs that the state trial judge was biased against him are unsupported by the record.

Thus, Sterling has failed to establish that his counsel had reason to seek recusal of the state trial judge, that a motion to recuse would have been successful or that he was prejudiced in any way. Counsel does not act deficiently in failing to file a meritless motion. See Smith, 907 F.2d at 585 n.6; Koch, 907 F.2d at 530. In the absence of the required showing, he has not demonstrated that the state courts' denial of relief was contrary to or an unreasonable application of Supreme Court law. Sterling is not entitled to relief on this issue.

F.    CHALLENGE A SLEEPING JUROR

Broadly construing Sterling's arguments, he asserts that his counsel was ineffective when he failed to object sooner to a juror whom he alleges was sleeping at times during the proceedings. The record reflects that, during the state trial court's instructions to the jury, the judge stopped at some point and said, "Mr. Freeman, are you with us, sir? Mr. Freeman."[28] Just before jury deliberations, Sterling's counsel requested that it be placed on the record that this statement was made by the court when juror

---

[28]St. Rec. Vol. 10 of 16, Trial Transcript, p. 2457, 5/17/12.

Freeman was seen "nodding off" and had been seen by both counsel for the defense and the State nodding off during closing arguments.[29]  The court also noted that Freeman nodded off "several other times during the trial," and specifically that "[h]e nodded off, off and on throughout, including the voir dire and including sitting out there in the hall but you still chose him. Okay."[30]  Sterling's counsel indicated that he did not know Freeman was falling asleep during the trial, only during closing arguments.[31]  The court then conceded, "I can't say during the trial per se," and clearly indicated that neither she nor counsel knew for sure he had nodded off during evidence presentation.[32] Nevertheless, Sterling's counsel was not sure whether Freeman should remain on the jury through deliberations in light of the fact that he appeared to have nodded off during the jury instructions.  The court found it doubtful that Freeman would fall asleep during deliberations and, without any certainty that Freeman nodded off during the actual trial, she declined defense counsel's request to replace or remove Freeman from the jury.[33] When the issue was addressed on direct appeal, the Louisiana Fifth Circuit found no error

---

[29]Id. at p. 2467.

[30]Id.

[31]Id. at p. 2469.

[32]Id. at pp. 2469-70.

[33]Id. at p. 2470-71.

in the trial court's decision to allow the juror to remain for deliberations in light of the trial court's findings and reasons supporting the decision to leave Freeman on the jury.[34]

On post-conviction review, the Louisiana Fifth Circuit was the only court to comment directly on this aspect of Sterling's claim of ineffective assistance of counsel. In doing so, the court assumed - - without resolving - - that counsel's failure to object sooner could have been ineffective assistance since Freeman was seen nodding off during voir dire. The court, however, found that Sterling failed to prove prejudice since there was no indication that the juror slept during presentation of evidence and since Freeman was one of two jurors who voted <u>not</u> guilty on the charge for which Sterling was convicted.[35]

Contrary to Sterling's suggestions, the transcript does not reflect that his counsel stated that he saw juror Freeman "nodding off" or sleeping at any time other than during closing arguments.[36] Nevertheless, as ultimately resolved by the state courts, Sterling has not shown that the removal of Freeman from the juror at any time during the proceedings would have altered the outcome of the case such to have constituted prejudice under <u>Strickland</u>. Sterling was convicted of aggravated battery by a 10 to 2 verdict, and

---

[34]<u>Sterling</u>, 131 So.3d at 305-06; St. Rec. Vol. 10 of 16, 5th Cir. Opinion, 13-KA-287, pp. 16-17, 12/12/13.

[35]St. Rec. Vol. 13 of 16, 5th Cir. Order, 15-KH-519, pp. 2-3, 9/16/15.

[36]St. Rec. Vol. 10 of 16, Trial Transcript, p. 2469, 5/17/12.

Freeman was indicated to be one of the two <u>not</u> guilty votes on the relevant count.[37]
Without a showing that an action by his counsel unreasonably failed to take an action that
prejudiced the outcome of the proceeding, Sterling has not established denial of effective
assistance of counsel under <u>Strickland</u>.

The state courts' denial of relief on this issue was not contrary or an unreasonable
application of <u>Strickland</u>.  Sterling is not entitled to relief on this issue.

G.    <u>CROSS-EXAMINE VICTIM ABOUT TEXT MESSAGES</u>

Sterling claims that his counsel was ineffective when he failed to cross-examine
the victim about certain text messages Sterling received from her.  Sterling asserts that
he read the text messages while he was on the stand.  However, his counsel did not want
to question the victim about the messages, because he did not want to pressure her in
front of the jury.  Relief on this issue was generally denied by the state courts under
<u>Strickland</u>.

During his trial testimony, Sterling testified about his relationship with the victim
and the contents of a number of text messages he exchanged with the victim, which
mostly addressed his failure to give her money when he had it.  Earlier, during the
prosecution's case-in-chief, Sterling's counsel questioned the victim in detail on cross-

---

[37]<u>See</u> St. Rec. Vol. 10 of 16, Trial Transcript, p. 2478, 5/17/12; St. Rec. Vol. 13 of 16, 5th Cir.
Order, 15-KH-519, p. 3, 9/16/15; <u>Sterling</u>, 131 So.2d at 306 n.6; St. Rec. Vol. 10 of 16, 5th Cir. Opinion,
13-KA-287, p. 17 n.6, 12/12/13.

examination about the shooting incident and their relationship up to that point.[38]  These

questions included the same topics addressed by Sterling in his later testimony.  Counsel

asked the victim about her two guns, which she indicated had been taken from her home,

one of which was the weapon used by Sterling to shoot her.  He asked her about their on-

again, off-again relationship, including her decision that Sterling move out of her home.

They discussed Sterling's disappointment that the victim was not sympathetic enough

about his suffering with cancer.  He questioned her about the text messages in which

Sterling claimed that she needed help paying her bill because her business slowed in

December, something she adamantly denied.[39]  Defense counsel also asked her about

some money Sterling gave her which he received from a lawsuit, a topic also

addressed in the text messages.[40]

The record demonstrates that counsel asked the victim questions related to the

same topics later derived by Sterling from the text messages and other pointed questions

in an effort to discredit her version of the events on the day of the shooting.  Sterling's

complaints about counsel's questioning are not supported by the record and are otherwise

conclusory.  In addition, as Sterling concedes, counsel planned his questioning of the

victim as a matter of sound trial strategy to avoid the appearance of unnecessarily

---

[38]St. Rec. Vol. 10 of 16, Trial Transcript, pp. 2311-2324, 5/16/12.

[39]Id. at p. 2317.

[40]Id. at p. 2322.

pressuring her in front of the jury.  For these reason, Sterling has not established deficient performance by his counsel.  He also has not demonstrated any prejudice arising from his counsel's trial tactics and cross-examination of the victim.

The state courts' denial of relief on this issue was not contrary to or an unreasonable application of <u>Strickland</u>.  Sterling is not entitled to relief on this or any facet of his ineffective assistance of counsel claim.

H.    <u>NO CUMULATIVE ERROR</u>

Sterling contends in his reply to the State's opposition that this court should consider the cumulative effects of his counsel's errors and grant him federal habeas relief. Review of this claim was not exhausted in the state courts, but nevertheless is without merit and can be disposed of accordingly.  28 U.S.C. § 2254(b)(2).

Due process standards require this court to consider "whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." <u>Swarthout v. Cooke</u>, 562 U.S. 216, 219 (2011) (citing <u>Ky. Dept. of Corr. v. Thompson</u>, 490 U.S. 454, 460 (1989)).  Due process requires, therefore, that the court grant habeas relief only when the cumulative errors of the state court make the underlying proceeding fundamentally unfair.  <u>Neyland v. Blackburn</u>, 785 F.2d 1283, 1292 (5th Cir. 1986).

The Supreme Court has recognized that the cumulative effect of established errors, though not individually worthy, could be collectively significant under the due

process standard.  Kyles v. Whitley, 514 U.S. 419, 436-37 (1995).  Cumulative error "provides relief only when the constitutional errors committed in the state trial court so fatally infected the trial that they violated the trial's fundamental fairness." (internal quotations omitted) Carty v. Quarterman, 345 F. App'x 897, 909 (5th Cir. 2009) (quoting Spence v. Johnson, 80 F.3d 989, 1000 (5th Cir. 1996)).  To provide relief on federal habeas review, cumulative errors must have "more likely than not caused a suspect verdict." (citation omitted) Carty, 345 F. App'x at 909.

For the reasons discussed above, Sterling has identified no constitutional error by the state courts arising from his state criminal proceedings or the state court rulings on the effective assistance of his counsel.  As to his counsel's assistance, he has shown no errors at all, much less errors that can be considered to have created a prejudicial effect. See Turner v. Quarterman, 481 F.3d 292, 301 (5th Cir. 2007) (meritless claims or claims that are not prejudicial cannot be cumulated regardless of the total number raised) (citing Derden v. McNeel, 978 F.2d 1453, 1454, 1461 (5th Cir. 1992)).  When individual contentions of ineffective assistance are meritless, that result cannot be changed simply by asserting the same claims collectively.  "[I]neffective assistance of counsel cannot be created from the accumulation of acceptable decisions and actions."  United States v. Hall, 455 F.3d 508, 520 (5th Cir. 2006) (citing Miller v. Johnson, 200 F.3d 274, 286 n.6 (5th Cir. 2000)); Sholes v. Cain, 370 F. App'x 531, 535 (5th Cir. 2010); Mullen v.

<u>Blackburn</u>, 808 F.2d 1143, 1147 (5th Cir. 1987) (with respect to cumulation of meritless claims, "Twenty times zero equals zero.").

Without some showing of a constitutional error, there can be no deleterious cumulative effect for this court to consider. <u>Turner</u>, 481 F.3d at 301 ("... where individual allegations of error are not of constitutional stature or are not errors, there is 'nothing to cumulate.'"); <u>Martinez-Perez v. Dretke</u>, 172 F. App'x 76, 83 (5th Cir. 2006) ("Obviously, if there was <u>no</u> error . . . there was <u>no</u> cumulative error." (emphasis in original)); <u>see also</u> <u>United States v. Fields</u>, 761 F.3d 443, 483 (5th Cir. 2014) (where no error by lower court was established, there was no cumulative error).

The state courts' denial of relief on all of Sterling's arguments of ineffective assistance of counsel was not contrary to or an unreasonable application of Supreme Court precedent, including <u>Strickland</u>. Sterling therefore is not entitled to relief on this claim or any of his assertions of ineffective assistance of counsel.

## **<u>RECOMMENDATION</u>**

For the foregoing reasons, it is **RECOMMENDED** that Sterling's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of

plain error, from attacking on appeal the unobjected-to proposed factual findings and

legal conclusions accepted by the district court, provided that the party has been served

with notice that such consequences will result from a failure to object.  Douglass v.

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28

U.S.C. § 636(b)(1)).[41]

New Orleans, Louisiana, this _____26th_____ day of January, 2018.


JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[41]Douglass referenced the previously applicable ten-day period for the filing of objections.
Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.